FILED

2013 JUN 19  PM 3: 07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2012 Grand Jury

CR13-0088

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | SA CR No. 13-_____ |
| Plaintiff, | ) | I N D I C T M E N T |
| v. | ) | [18 U.S.C. § 1349: Conspiracy to Commit Mail Fraud and Wire Fraud; 18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to Be Done] |
| FAISAL ASHRAF, aka "Sal," | ) | |
| Defendant. | ) | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1349]

A.    INTRODUCTORY ALLEGATIONS

1.    At all times relevant to this Indictment:

        a.    Hewlett Packard ("HP") was a company that produced and sold computer equipment.

        b.    HP offered a program called the "Volume Big Deal" program, also known as ("aka") the "Big Deal" program.  The Big Deal program offered special discounts substantially greater than others offered by HP, including to HP's Channel Partners

WLH:wlh

1  (authorized re-sellers).  The Big Deal program required a party

2  entering into the program to represent that the products obtained

3  through the program were not to be resold to anyone other than

4  the specifically identified end customer/end user.  HP also

5  required parties entering into the program to provide specific

6  information about the end customer/end user and the purpose for

7  the equipment.  All Big Deal requests were reviewed by multiple

8  departments at HP prior to any approval.  If approved, HP would

9  issue a "Big Deal Letter" authorizing the discounted pricing,

10  which would include the names of the authorized resellers who had

11  authority to purchase products for the end user pursuant to the

12  terms of the Big Deal Letter.  Other authorized HP resellers

13  could seek to be added to an existing Big Deal Letter in order to

14  also purchase products for the specific end user pursuant to a

15  Big Deal Letter.

16       c.  Cisco Systems Inc. ("Cisco") was a company that

17  produced and sold computer networking equipment.

18       d.  Cisco offered Authorized Channel Partners

19  (authorized re-sellers) various levels of discounts, ranging from

20  35-42% off of Cisco's Global List Price.  Cisco "Gold Partners"

21  was the highest level of Authorized Channel Partner.  In certain

22  circumstances, however, Cisco authorized discounts greater than

23  42%, through a program called Deal Support Automation or "DSA."

24  Such authorizations required representations and proof to justify

25  these DSAs.  These representations were reviewed by multiple

26  departments at Cisco prior to any approval.

27       e.  Defendant FAISAL ASHRAF, also known as "Sal"

28  ("defendant ASHRAF"), was a resident of Houston, Texas, and

1  operated a business called Netcore, Inc. ("Netcore") that, among

2  other things, sold HP and Cisco products.

3         f.   U.H. was an unindicted coconspirator.

4         g.   S.J. was an unindicted coconspirator who worked at

5  Company A which was located in Irvine, California, and was

6  engaged in the business of re-selling HP and Cisco products,

7  among other things.  S.J. specialized in the acquisition of

8  products for resale by Company A.

9         h.   GE IT Logistics, Schlumberger IT Logistics, BP

10  Logistics, BP Pakistan, Data Centers of America, Transglobal IT

11  Solutions, U.S. Technology Solutions, and U.S. Computing

12  Solutions were sham companies used as end customers/end users of

13  Cisco and HP products sold by defendant ASHRAF and U.H.

14         i.   Intellisoft of North Carolina was an entity

15  operated by defendant ASHRAF and U.H.

16         j.   Federal Express ("Fed Ex") was an interstate

17  commercial carrier.

18         k.   Airgroup was an interstate commercial carrier.

19  B.   THE OBJECTS OF THE CONSPIRACY

20      2.   Beginning on a date unknown but prior to on or about

21  May 31, 2006, and continuing through on or about August 11, 2009,

22  in Orange County, within the Central District of California, and

23  elsewhere, defendant ASHRAF, together with others known and

24  unknown to the Grand Jury, knowingly combined, conspired, and

25  agreed to commit the following offenses against the United

26  States:

27         a.   Mail Fraud, in violation of Title 18, United

28  States Code, Section 1341; and

3

1        b.   Wire Fraud, in violation of Title 18, United

2  States Code, Section 1343.

3  C.   THE MANNER AND MEANS OF THE CONSPIRACY

4     3.   The objects of the conspiracy were carried out, and to

5  be carried out, in substance, as follows:

6      a.   Defendant ASHRAF, U.H., S.J., and others known and

7  unknown to the Grand Jury, to obtain Big Deal discounts from HP

8  and special discounts from Cisco, would falsely represent, and

9  conceal material facts to give the false impression, to Cisco and

10  HP that they were purchasing products for use by specific end

11  customers/end users and not for resale use, when, in truth and in

12  fact and as defendant ASHRAF well knew, defendant ASHRAF, U.H.,

13  S.J., and others known and unknown to the Grand Jury would sell

14  the products to Company A for resale.  To fraudulently obtain Big

15  Deal discounts, defendant ASHRAF and U.H. would sometimes pretend

16  to purchase HP products for large companies that had existing Big

17  Deal letters with HP, such as Schlumberger, BP (British

18  Petroleum) Amoco, and General Electric.  To accomplish this

19  scheme involving already existing Big Deal letters, defendant

20  ASHRAF and U.H. would create sham end user entities such as

21  "Schlumberger IT Logistics," "BP Logistics," "BP Pakistan," and

22  "GE IT Logistics" ("the sham end users"), which falsely appeared

23  to be subsidiaries of the legitimate end users listed on the

24  existing Big Deal letters.  In some of these cases, defendant

25  ASHRAF and U.H. would arrange for one of their companies (such as

26  Intellisoft or Netcore) to be registered as an authorized HP

27  reseller and then added as an authorized HP reseller to an

28  existing Big Deal letter, so they could order products through

1  their company for the purported sham end users.   In other cases,

2  defendant ASHRAF and U.H. would order HP products from an

3  independent authorized HP reseller already listed on an existing

4  Big Deal letter for the purported sham end users.

5    b. Once defendant ASHRAF and U.H. would obtain the

6  discounted products from Cisco and HP, the products would be

7  shipped to S.J. and others at Company A.

8    c. Company A would resell and facilitate the resale

9  of the discounted Cisco and HP products for less than legitimate

10  Cisco and HP Channel Partners could even purchase the products,

11  much less sell them.

12  D. OVERT ACTS

13    4. In furtherance of the conspiracy and to accomplish its

14  objects, defendant ASHRAF, U.H., and S.J., together with others

15  known and unknown to the Grand Jury, committed the following

16  overt acts, among others, in the Central District of California

17  and elsewhere:

18    Overt Act No. 1: On or about March 31, 2006, unindicted

19  co-conspirator U.H. forwarded defendant ASHRAF an e-mail from HP

20  which stated that parties entering into Big Deal agreements "may

21  not sell product that has been granted special pricing to anyone

22  other than the identified end customer."

23    Overt Act No. 2: On or about April 26, 2006, U.H.

24  registered the domain name www.INTELLISOFTINC.NET.

25    Overt Act No. 3: On or about August 31, 2006, defendant

26  ASHRAF received a confirmation e-mail regarding the formation of

27  a company in Oregon called "Data Centers of America, Inc."

28    Overt Act No. 4: On or about September 15, 2006, U.H.

forwarded to defendant ASHRAF an e-mail that U.H. had earlier sent to HP in which U.H. had stated that he "ha[d] been working with Schlumberger globally since 2001."

Overt Act No. 5:    On or about January 29, 2007, U.H. responded to an e-mail inquiry from HP, and copied defendant ASHRAF, informing HP that defendant ASHRAF would be the point of contact for the "GE Account" and directing defendant ASHRAF to provide certain HP sales reports to HP.

Overt Act No. 6:    On or about April 4, 2007, defendant ASHRAF sent an e-mail to K.O., an HP employee, falsely representing that certain sales of HP products obtained through the Big Deal program in February and March of 2007 were sold to General Electric ("GE").

Overt Act No. 7:    On or about April 4, 2007, U.H. sent an e-mail to A.C., a relative and former GE employee, and copied defendant ASHRAF, attaching two lists of products and stating "HP may call the contact we provide them and ask them if they ordered this stuff, in that case just say yes we order form [sic] netcore and will get back to you with details."

Overt Act No. 8:    On or about April 5, 2007, A.C. sent an email to U.H. and copied defendant ASHRAF telling U.H. to list A.C. and A.C.'s former assistant, S.P., as a GE contact, but to misspell A.C.'s e-mail address.

Overt Act No. 9:    On or about April 6, 2007, defendant ASHRAF forwarded to U.H. an e-mail exchange with K.O., an HP employee, in which defendant ASHRAF falsely represented that an individual named S.P. was defendant ASHRAF's contact at GE Healthcare.

1    <u>Overt Act No. 10</u>:    On or about April 12, 2007, defendant
2    ASHRAF caused a shipment of HP products obtained through the Big
3    Deal program to be delivered via Airgroup from Stratford,
4    Connecticut, to Irvine, California.

5    <u>Overt Act No. 11</u>:    On or about April 16, 2007, defendant
6    ASHRAF caused a shipment of HP products obtained through the Big
7    Deal program to be delivered via Airgroup from Houston, Texas, to
8    Irvine, California.

9    <u>Overt Act No. 12</u>:    On or about April 17, 2007, defendant
10   ASHRAF caused a shipment of HP products obtained through the Big
11   Deal program to be delivered via Airgroup from Houston, Texas, to
12   Irvine, California.

13   <u>Overt Act No. 13</u>:    On or about April 18, 2007, defendant
14   ASHRAF caused a shipment of HP products obtained through the Big
15   Deal program to be delivered via Airgroup from Houston, Texas, to
16   Irvine, California.

17   <u>Overt Act No. 14</u>:    On or about April 19, 2007, U.H.
18   registered the domain name www.GEITLOGISTICS.COM and created the
19   email address [s.p.]@geitlogistics.com.

20   <u>Overt Act No. 15</u>:    On or about April 19, 2007, defendant
21   ASHRAF caused a shipment of HP products obtained through the Big
22   Deal program to be delivered via Airgroup from Houston, Texas, to
23   Irvine, California.

24   <u>Overt Act No. 16</u>:    On or about April 20, 2007, defendant
25   ASHRAF caused a shipment of HP products obtained through the Big
26   Deal program to be delivered via Airgroup from Stratford,
27   Connecticut, to Irvine, California.

28   <u>Overt Act No. 17</u>:    On or about April 23, 2007, U.H.

forwarded to defendant ASHRAF an email from R.K. stating that R.K. would be "receiving a client number today under the Master Account GECOMPANY."

Overt Act No. 18:   On or about April 24, 2007, defendant ASHRAF caused a shipment of HP products obtained through the Big Deal program to be delivered via Airgroup from Houston, Texas, to Irvine, California.

Overt Act No. 19:   On or about April 25, 2007, U.H. sent defendant ASHRAF an e-mail stating, "We need to have a [sic] address at one of these locations .. Mailbox or office for mail."

Overt Act No. 20:   On or about April 27, 2007, defendant ASHRAF caused a shipment of HP products obtained through the Big Deal program to be delivered via Airgroup from Houston, Texas, to Irvine, California.

Overt Act No. 21:   On or about April 30, 2007, defendant ASHRAF received a confirmation e-mail for an order of HP products.

Overt Act No. 22:   On or about May 2, 2007, defendant ASHRAF caused a shipment of HP products obtained through the Big Deal program to be delivered via Airgroup from Houston, Texas, to Irvine, California.

Overt Act No. 23:   On or about May 4, 2007, defendant ASHRAF caused a shipment of HP products obtained through the Big Deal program to be delivered via Airgroup from Houston, Texas, to Irvine, California.

Overt Act No. 24:   On or about May 9, 2007, U.H. created email address sourcing@geitlogistics.com.

Overt Act No. 25:   On or about May 9, 2007, defendant

1  ASHRAF forwarded to U.H. an e-mail regarding leased space in
2  Connecticut for "GE IT Logistics," including instructions for the
3  signage for the door and the mailbox.

4      Overt Act No. 26:  On or about May 9, 2007, defendant
5  ASHRAF caused a shipment of HP products obtained through the Big
6  Deal program to be delivered via Airgroup from Stratford,
7  Connecticut, to Irvine, California.

8      Overt Act No. 27:  On or about May 10, 2007, defendant
9  ASHRAF caused a shipment of HP products obtained through the Big
10 Deal program to be delivered via Airgroup from Houston, Texas, to
11 Irvine, California.

12     Overt Act No. 28:  On or about May 11, 2007, defendant
13 ASHRAF caused a shipment of HP products obtained through the Big
14 Deal program to be delivered via Airgroup from Stratford,
15 Connecticut, to Irvine, California.

16     Overt Act No. 29:  On or about May 14, 2007, defendant
17 ASHRAF caused a shipment of HP products obtained through the Big
18 Deal program to be delivered via Airgroup from Houston, Texas, to
19 Irvine, California.

20     Overt Act No. 30:  On or about May 18, 2007, defendant
21 ASHRAF caused a shipment of HP products obtained through the Big
22 Deal program to be delivered via Airgroup from Houston, Texas, to
23 Irvine, California.

24     Overt Act No. 31:  On or about May 21, 2007, defendant
25 ASHRAF caused a shipment of HP products obtained through the Big
26 Deal program to be delivered via Airgroup from Stratford,
27 Connecticut, to Irvine, California.

28     Overt Act No. 32:  On or about May 21, 2007, defendant

1  ASHRAF sent U.H. an e-mail regarding orders for HP products.

2      Overt Act No. 33:   On or about May 22, 2007, defendant

3  ASHRAF caused a shipment of HP products obtained through the Big

4  Deal program to be delivered via Airgroup from Stratford,

5  Connecticut, to Irvine, California.

6      Overt Act No. 34:   On or about May 23, 2007, U.H. sent

7  defendant ASHRAF login and password information for a legitimate

8  HP website.

9      Overt Act No. 35:   On or about May 24, 2007, defendant

10  ASHRAF caused a shipment of HP products obtained through the Big

11  Deal program to be delivered via Airgroup from Houston, Texas, to

12  Irvine, California.

13      Overt Act No. 36:   On or about May 25, 2007, defendant

14  ASHRAF caused a shipment of HP products obtained through the Big

15  Deal program to be delivered via Airgroup from Stratford,

16  Connecticut, to Irvine, California.

17      Overt Act No. 37:   On or about May 29, 2007, defendant

18  ASHRAF caused a shipment of HP products obtained through the Big

19  Deal program to be delivered via Airgroup from Houston, Texas, to

20  Irvine, California.

21      Overt Act No. 38:   On or about May 30, 2007, defendant

22  ASHRAF caused a shipment of HP products obtained through the Big

23  Deal program to be delivered via Airgroup from Stratford,

24  Connecticut, to Irvine, California.

25      Overt Act No. 39:   On or about June 1, 2007, defendant

26  ASHRAF received an e-mail fowarded from an account belonging to

27  "GEIT Logistics Sourcing."

28      Overt Act No. 40:   On or about June 4, 2007, defendant

ASHRAF caused a shipment of HP products obtained through the Big Deal program to be delivered via Airgroup from Stratford, Connecticut, to Irvine, California.

Overt Act No. 41:   On or about June 5, 2007, U.H. sent an e-mail regarding shipping from Houston and from a Connecticut warehouse and copied defendant ASHRAF and S.J.

Overt Act No. 42:   On or about June 5, 2007, defendant ASHRAF caused a shipment of HP products obtained through the Big Deal program to be delivered via Airgroup from Stratford, Connecticut, to Irvine, California.

Overt Act No. 43:   On or about June 6, 2007, S.J. caused a payment by wire transfer by Company A in the amount of $198,504.00 to Netcore.

Overt Act No. 44:   On or about June 12, 2007, defendant ASHRAF forwarded the transcript of a "chat" that he had conducted with HP in which defendant ASHRAF stated that the Big Deal products that he sought were not going to be resold.

Overt Act No. 45:   On or about June 12, 2007, defendant ASHRAF sent U.H. an e-mail containing an earlier e-mail in which an individual stated to U.H., "Honestly I do not have any problem with this, but this contradicts your keeping a low profile in the Channel."

Overt Act No. 46:   On or about June 12, 2007, S.J. caused a payment by wire transfer by Company A in the amount of $454,263.00 to Netcore.

Overt Act No. 47:   On or about June 12, 2007, defendant ASHRAF sent an e-mail containing a price list to H.D. and copied U.H.

1   <u>Overt Act No. 48</u>:   On or about June 14, 2007, U.H.

2   forwarded to defendant ASHRAF an e-mail stating, "By default the

3   shipped to is from HP to us unless noted by HAWB# or says to

4   [Company A] !!!"

5   <u>Overt Act No. 49</u>:   On or about June 15, 2007, S.J. caused a

6   payment by wire transfer by Company A in the amount of

7   $176,619.00 to Netcore.

8   <u>Overt Act No. 50</u>:   On or about June 20, 2007, S.J. caused a

9   payment by wire transfer by Company A in the amount of

10   $397,922.00 to Netcore.

11   <u>Overt Act No. 51</u>:   On or about June 20, 2007, defendant

12   ASHRAF caused a shipment of HP products obtained through the Big

13   Deal program to be delivered via Airgroup from Houston, Texas, to

14   Irvine, California.

15   <u>Overt Act No. 52</u>:   On or about June 22, 2007, S.J. caused a

16   payment by wire transfer by Company A in the amount of

17   $158,344.00 to Netcore.

18   <u>Overt Act No. 53</u>:   On or about June 27, 2007, S.J. caused a

19   payment by wire transfer by Company A in the amount of

20   $189,208.00 to Netcore.

21   <u>Overt Act No. 54</u>:   On or about June 28, 2007, S.J. caused a

22   payment by wire transfer by Company A in the amount of

23   $332,432.00 to Netcore.

24   <u>Overt Act No. 55</u>:   On or about June 29, 2007, defendant

25   ASHRAF sent U.H. an e-mail regarding a purchase of HP products.

26   <u>Overt Act No. 56</u>:   On or about July 2, 2007, S.J. caused a

27   payment by wire transfer by Company A in the amount of

28   $169,527.00 to Netcore.

Overt Act No. 57:   On or about July 3, 2007, defendant ASHRAF caused a shipment of HP products obtained through the Big Deal program to be delivered via Airgroup from Houston, Texas, to Irvine, California.

Overt Act No. 58:   On or about July 6, 2007, S.J. caused a payment by wire transfer by Company A in the amount of $547,748.40 to Netcore.

Overt Act No. 59:   On or about July 10, 2007, defendant ASHRAF received a forwarded e-mail from the e-mail account [s.p.]@geitlogistics.com.

Overt Act No. 60:   On or about July 10, 2007, defendant ASHRAF sent an e-mail to H.D. containing tracking information.

Overt Act No. 61:   On or about July 11, 2007, defendant ASHRAF and U.H. caused Netcore to purchase a cashier's check in the amount of $1,817,769.67 to pay Compucom Systems for "GEIT Logistics"-related sales.

Overt Act No. 62:   On or about July 12, 2007, defendant ASHRAF and U.H. caused Netcore to purchase a cashier's check in the amount of $827,167.17 to pay Compucom Systems for "BP Logistics"-related sales.

Overt Act No. 63:   On or about July 17, 2007, defendant ASHRAF sent an e-mail to U.H. regarding a shipment of HP products obtained through the Big Deal program.

Overt Act No. 64:   On or about July 18, 2007, S.J. caused a payment by wire transfer by Company A in the amount of $742,388.00 to Netcore.

Overt Act No. 65:   On or about July 24, 2007, S.J. caused a payment by wire transfer by Company A in the amount of

13

$162,673.00 to Netcore.

Overt Act No. 66:   On or about July 27, 2007, defendant ASHRAF received an e-mail containing shipment tracking information forwarded from the "GEIT Logistics Sourcing" e-mail account.

Overt Act No. 67:   On or about July 27, 2007, S.J. caused a payment by wire transfer by Company A in the amount of $130,059.00 to Netcore.

Overt Act No. 68:   On or about August 1, 2007, S.J. caused a payment by wire transfer by Company A in the amount of $227,610.00 to Netcore.

Overt Act No. 69:   On or about August 6, 2007, S.J. caused a payment by wire transfer by Company A in the amount of $229,024.00 to Netcore.

Overt Act No. 70:   On or about August 7, 2007, S.J. caused a payment by wire transfer by Company A in the amount of $310,622.00 to Netcore.

Overt Act No. 71:   On or about August 8, 2007, defendant ASHRAF sent an e-mail to Compucom regarding an order of HP products that he had placed.

Overt Act No. 72:   On or about August 9, 2007, defendant ASHRAF forwarded to U.H. a chat transcript regarding HP "asking questions" if the volume of HP products grew too big.

Overt Act No. 73:   On or about August 13, 2007, S.J. caused a payment by wire transfer by Company A in the amount of $242,933.00 to Netcore.

Overt Act No. 74:   On or about August 14, 2007, defendant ASHRAF received an e-mail attaching a report regarding "the

volumes GE spends with Compucom," forwarded from the "GEIT Logistics Sourcing" e-mail account.

Overt Act No. 75:   On or about August 15, 2007, defendant ASHRAF sent an e-mail to U.H. requesting his "PW" and USER ID for the Compucom website.

Overt Act No. 76:   On or about August 16, 2007, S.J. caused a payment by wire transfer by Company A in the amount of $291,408.00 to Netcore.

Overt Act No. 77:   On or about August 20, 2007, defendant ASHRAF received an e-mail containing shipment tracking information forwarded from the "GEIT Logistics Sourcing" e-mail account.

Overt Act No. 78:   On or about August 21, 2007, S.J. caused a payment by wire transfer by Company A in the amount of $174,247.52 to Netcore.

Overt Act No. 79:   On or about August 27, 2007, S.J. caused a payment by wire transfer by Company A in the amount of $199,602.00 to Netcore.

Overt Act No. 80:   On or about August 31, 2007, S.J. caused a payment by wire transfer by Company A in the amount of $136,224.00 to Netcore.

Overt Act No. 81:   On or about September 4, 2007, defendant ASHRAF sent U.H. an e-mail regarding a purchase placed by defendant ASHRAF of HP products.

Overt Act No. 82:   On or about September 13, 2007, U.H. created email account sherry.wyong@geitlogistics.com.

Overt Act No. 83:   On or about September 14, 2007, defendant ASHRAF received a forwarded e-mail inquiry from HP to

sherry.wyong@geitlogistics.com regarding an HP investigation of Big Deal products sold to GEIT Logistics.

Overt Act No. 84:   On or about September 18, 2007, defendant ASHRAF received a forwarded e-mail inquiry from HP to sherry.wyong@geitlogistics.com regarding an HP investigation of Big Deal products sold to GEIT Logistics and requesting "a contact within the US at GE that would be your counterpart here in the US."

Overt Act No. 85:   On or about September 19, 2007, defendant ASHRAF and U.H: caused a reply e-mail to be sent from sherry.wyong@geitlogistics.com to HP regarding GE IT Logistics stating "We operate as a joint venture in China, hence there is no counterpart or a manager for our group in the US."

Overt Act No. 86:   On or about February 13, 2008, U.H. registered the domain name www.DATACENTERSOFAMERICA.COM.

Overt Act No. 87:   On or about April 24, 2008, U.H. forwarded to defendant ASHRAF an e-mail that U.H. had submitted to HP attaching a Big Deal request for USTS Inc. (U.S. Technology Solutions Inc.).

Overt Act No. 88:   On or about April 29, 2008, U.H. sent an e-mail to HP falsely claiming that "Data Centers of America" ("DCA") needed HP products because it had "already closed more than $7,000,000 in sales contracts," that the product was being used for DCA's internal use in Oregon, and that DCA had about 31 employees.

Overt Act No. 89:   On or about May 5, 2008, U.H. forwarded to defendant ASHRAF an e-mail in which U.H. instructed an individual to create a sign reading "DATA Centers of America" and

16

to put on the door "Data Centers of America will start operations on May 15th."

Overt Act No. 90:   On or about June 9, 2008, U.H. registered the domain name www.TRANSGLOBALIT.NET.

Overt Act No. 91:   On or about September 22, 2008, U.H. sent Cisco an e-mail falsely claiming that TransGlobal IT Solutions "has been in business since 2005 with revenues of about $ 9,000,000 currently."

Overt Act No. 92:   On or about September 29, 2008, defendant ASHRAF caused U.S. Technologies Solutions, Inc. to become a registered Cisco partner.

Overt Act No. 93:   On or about October 7, 2008, defendant ASHRAF and U.H. caused the shipment of Cisco products obtained through the DSA program to be delivered via Fed Ex within Texas.

Overt Act No. 94:   On or about November 4, 2008, defendant ASHRAF and U.H. caused the shipment of Cisco products obtained through the DSA program to be delivered via Fed Ex within Texas.

Overt Act No. 95:   On or about December 19, 2008, defendant ASHRAF caused to be submitted to Cisco a "Cisco Product Sales Certification" wherein defendant ASHRAF acknowledged that he was obtaining a "Special Product Discount" that would not be offered to him if the product was intended for resale.

Overt Act No. 96:   On or about February 13, 2009, U.H. sent an e-mail to Cisco representing that "everything" ordered for Transglobal was "going in to [sic] the Dallas DC."

Overt Act No. 97:   On or about April 6, 2009, S.J. replied "Yawn" to an e-mail from U.H. stating that Cisco had "basically put the brakes on any additional discounts . . . ."

<u>Overt Act No. 98</u>:   On or about May 13, 2009, U.H. falsely represented to an undercover law enforcement agent acting as a Cisco representative that the products obtained through the DSA program that he had ordered to date from Cisco had been shipped by Transglobal to a Florida data center on Banks Road (the "Banks Road data center").

<u>Overt Act No. 99</u>:   On or about May 13, 2009, U.H. falsely represented to an undercover law enforcement agent acting as a Cisco representative that the Banks Road data center occupied a 16,000 square foot space and provided service to three clients, Schlumberger, British Petroleum, and the United States Department of Agriculture, which had provided U.H. with commitment letters representing over 70% of the required Cisco products.

<u>Overt Act No. 100</u>:   On or about May 13, 2009, U.H. falsely represented to an undercover law enforcement agent acting as a Cisco representative that U.H.'s $5,000,000 pending order was for the completion of the Banks Road data center and that Transglobal was forecasting additional data centers in Dallas, Texas, and Eugene, Oregon.

<u>Overt Act No. 101</u>:   On or about June 2, 2009, S.J. caused a payment by wire transfer by Company A in the amount of $93,010.00 to Netcore.

<u>Overt Act No. 102</u>:   On or about June 15, 2009, defendant ASHRAF sent an e-mail to an undercover law enforcement agent acting as a Cisco employee stating that an end user called "TransGlobal" could purchase Cisco products.

<u>Overt Act No. 103</u>:   On or about June 25, 2009, S.J. caused a payment by wire transfer by Company A in the amount of $50,879.90

to Netcore.

Overt Act No. 104:   On or about July 7, 2009, defendant ASHRAF falsely represented to an undercover law enforcement agent acting as a Cisco representative that a "data center" in Florida belonging to "Transglobal IT Solutions" was nearly complete.

Overt Act No. 105:   On or about July 7, 2009, defendant ASHRAF falsely represented to an undercover law enforcement agent acting as a Cisco representative that his company was doing business with GE, Schlumberger, and Halliburton.

COUNTS TWO THROUGH THREE

[18 U.S.C. §§ 1341, 2]

5.   The Grand Jury hereby repeats and realleges paragraphs 1, 3, and 4 of this Indictment, including all subparagraphs, as if fully set forth herein.

A.   THE SCHEME TO DEFRAUD

6.   Beginning on a date unknown to the Grand Jury but on or before May 31, 2006, and continuing through on or about August 11, 2009, in Orange County, within the Central District of California, and elsewhere, defendant ASHRAF, together with others known and unknown to the Grand Jury, aiding and abetting one another, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud Cisco and HP as to material matters and to obtain property, namely, Cisco and HP product discounts, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

B.   MANNER AND MEANS

7.   The fraudulent scheme was carried out, in part, as described in paragraph 3 of this Indictment.

C.   THE USE OF THE MAILS

8.   On or about the dates set forth below, within the Central District of California and elsewhere, defendant ASHRAF, together with others known and unknown to the Grand Jury, aiding and abetting one another, for the purpose of executing and attempting to execute the above-described scheme to defraud, caused fraudulently obtained Cisco and HP products to be deposited with and to be delivered by an interstate commercial

carrier as described below according to the directions thereon:

| COUNT | DATE | CARRIER | PRODUCT |
|-------|------|---------|---------|
| TWO | July 27, 2007 | Airgroup | HP |
| THREE | August 2, 2007 | Fed Ex | HP |

COUNTS FOUR THROUGH SIX

[18 U.S.C. §§ 1343, 2]

9.   The Grand Jury hereby repeats and realleges paragraphs 1, 3, and 4 of this Indictment, including all subparagraphs, as if fully set forth herein.

A.   THE SCHEME TO DEFRAUD

10.   Beginning on a date unknown to the Grand Jury but on or before May 31, 2006, and continuing through on or about August 11, 2009, in Orange County, within the Central District of California, and elsewhere, defendant ASHRAF, together with others known and unknown to the Grand Jury, aiding and abetting one another, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud Cisco and HP as to material matters and to obtain property, namely, Cisco and HP product discounts, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

B.   MANNER AND MEANS

11.   The fraudulent scheme was carried out, in part, as described in paragraph 3 of this Indictment.

C.   THE USE OF THE WIRES

12.   On or about the dates set forth below, within the Central District of California and elsewhere, defendant ASHRAF, together with others known and unknown to the Grand Jury, aiding and abetting one another, for the purpose of executing and attempting to execute the above-described scheme to defraud, transmitted, caused the transmission of, and aided and abetted the transmission of, the following items by means of wire and

22

radio communication in interstate and foreign commerce:

| COUNT | DATE | ITEM WIRED |
|-------|------|------------|
| FOUR | Aug. 7, 2007 | $310,622.00 to Netcore |
| FIVE | June 2, 2009 | $93,010.00 to Netcore |
| SIX | June 25, 2009 | $50,879.90 to Netcore |

A TRUE BILL

/s/
_____
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

WESLEY L. HSU
Assistant United States Attorney
Chief, Cyber and Intellectual
Property Crimes Section

LISA E. FELDMAN
Assistant United States Attorney
Cyber and Intellectual
Property Crimes Section

23